Opinion by
Morrison, J.,
By articles of agreement, dated December 31,1904, duly executed, acknowledged and delivered, the defendant, John W. Thompson, purchased from the plaintiff, Leonard Horner, Jr., about thirty acres of land located in Logan township, Blair county, Pennsylvania, for the price of $6.00 per acre, paying $8.00 in hand at the date of the agreement and the balance of the purchase money was to be paid annually as stipulated in the contract. By the terms of the agreement, default in making any of the payments when due caused the entire purchase money to become due and payable at once. The defendant defaulted and on demand refused to pay the purchase money and the plaintiff brought this equitable action of ejectment to enforce specific performance of the contract.
The plaintiff, at the trial, made a prima facie case by showing an application for vacant land, a warrant for the survey of the same, return of the survey and a patent from the commonwealth for a larger tract of land of which the thirty acres described in the contract were a part. We here remark that there seems to be no question that the defendant executed, acknowledged and delivered the contract and that he did not comply with its terms but neglected and refused to pay the purchase money therein reserved.
The defense set up was a claim to the land as the defendant’s own under a settlement and improvement right. It appeared in evidence at the trial that the defendant in 1896 bought of the Brotherline heirs ten acres of land, located in said township of Logan and being a part of the Richard Robeson tract adjoining the lands described in the agreement above mentioned. The defendant had his purchase from the Brotherline heirs surveyed and the lines marked on the ground; he built himself a house, stable *302 and outbuildings and also improved or cleared a small section of his purchase. The plaintiff contends that the defendant’s improvements were all within the lines of his purchase from the Brotherline heirs, but that it was discovered later that the lines of said purchase overlapped on some vacant land adjoining, and that the defendant’s house and part of his clearing was really upon the vacant land. On the part of the defendant it is contended that while he purchased the ten acres from the Brotherline heirs, he did not build his house thereon nor was it his intention to do so or to make other improvements upon that purchase; that under the advice of William Fraser, the surveyor who located the Brotherline purchase, he intended to and did place his buildings, or some of them, upon the vacant land for the purpose of taking up that land and improving and holding it as his own. So far as we can gather from the evidence the defendant never took possession and marked the lines of more than four acres of the vacant land and these four acres were immediately surrounding the defendant’s dwelling house.
The vacant land adjoining the Robeson survey was taken up by the plaintiff by an application for a warrant, filed December 5,1898, and a return of survey thereof was made March 15,1899, and a patent for the land was issued to plaintiff on March 29, 1899. The quantity of this vacant land surveyed and patented to the plaintiff was about 106 acres. When the county surveyor, William Fraser, had nearly completed running the lines of the vacant lands upon the plaintiff’s warrant, it was discovered that the defendant’s purchase from the Brotherlines overlapped on the vacant lands, and that a part of defendant’s buildings and improvements were on said vacant land to the extent of nearly four acres. This was as contended by plaintiff, but the defendant claimed that he had the ten acres purchased from the Brotherlines and about four acres more where his house stood on the vacant lands. The defendant’s contention that he was advised by the surveyor to place his buildings upon the vacant lands was pointedly *303 denied by tbe surveyor in his testimony at the trial. When the surveyor discovered that the defendant’s house and part of his improvements were on the so-called vacant lands, the defendant was called and informed of this situation. It is conceded that the surveyor told the defendant that the best thing to do was to have the vacancy run in on the plaintiff’s survey, and that he, defendant, could afterwards buy from plaintiff the quantity of land so run in at a pro rata of the cost of the whole survey, or that he, defendant, could have the same left out of the survey and warranted and patented in his own name; that it would, cost him about $12.00 to have it run in on the Horner survey and about $40.00 to apply and have it patented in his own name. At the trial, the surveyor, William Fraser, and three other witnesses, testified that the defendant instructed the surveyor to run the four acres in with plaintiff’s survey and he, defendant, would buy it from plaintiff. Upon this point the defendant testified at the trial: “Q. You knew what they were doing — that they were laying a survey? A. Not until he came to the Sol Forshey corner. Q. You knew what they were doing — that they were laying a survey to take up vacant land? A. Not until they came to the corner of the Sol Forshey tract, and Fraser says: ‘Here, Thompson, here is where I take your house, or shall I run around you?’ I says : ‘Don’t run around me.’ ... Q. You were with them? A. Here, hand me that draft. Fraser stated he was either going to run around me or ran me in. Q. They came down to your line; Fraser told you that you were on vacant ground, didn’t he — and that he would either ran you in, or run around you, just whichever you wanted, didn’t he? A. Yes. Q. He told you that you were on vacant ground- and that he could either run yqu in or run you out; that is, run above you and let you be or he could run you in and include you in the Horner survey? A. Yes; and I said: ‘Run me in, and bend in from corner to corner, so I see where the survey is.’” It is true that subsequent to this the defendant changed his testimony to *304 the effect that he told them “you. run me in and I will fight.”
It appears from the undisputed testimony that immediately after the survey the defendant went to see the-plaintiff and agreed upon a purchase of the four acres where his house was located for the sum of $12.00 and paid the same to the plaintiff and directed that a deed for the land be made to his wife and this was subsequently done.
There is absolutely no evidence that the defendant ever marked or established any line or lines to any portion of the vacant land, embraced in the plaintiff’s warrant, survey and patent, except to the four acres above referred to, and although it may have been wrong for the surveyor to include that land within the plaintiff’s survey, yet it seems to have been done at the request of the defendant, and the plaintiff conveyed it to the defendant’s wife, at his request, and, therefore, we cannot see that any harm whatever resulted to the defendant by this survey.
The learned trial judge was of the opinion, and so charged the jury, that the character of the defendant’s claim and the amount of land that he claimed out of the vacant tract was so indefinite that it would be entirely unsafe to allow him to recover in this case on the ground that he really owned the thirty acres, by settlement and occupation, which he purchased from the plaintiff by the contract above referred to. We have reached the conclusion that the learned judge fell into error in charging the jury, as quoted in the second assignment of error. In substance, he instructed them that if the county surveyor in surveying the plaintiff’s warrant for the vacant land included within the lines the defendant’s four acres where his house was located, that the survey, warrant and patent would all be void, “because, as I have said before, the county surveyor ought to stop when he got to that point, and if he went on in violation of his duty and caused this litigation for the Horners and for Thompson, it does seem to me that the warrant and patent would be void on the ground of public policy.” We do not think this is the law. *305 If the survey improperly embraced within its lines the defendant’s four acres it would only be void as to that land and we regard it clearly erroneous for the trial judge to say that the warrant and patent would be void on the ground of public policy. In our opinion, the question of public policy was not involved. In Marcy v. Gardinier, 7 Watts, 240, it was held as clearly stated in the syllabus: “The execution of a warrant, under the direction of the warrantee, including within .the survey lands which he knew to have been previously appropriated, does not render the survey void, except as to that part which was erroneously included.” In view of the fact that the learned trial judge was of the opinion that the defendant had failed in his attempt to show title by settlement and occupation to any of the land embraced in the plaintiff’s warrant, survey and patent, except the four acres, this portion of the charge was especially unfair to the plaintiff and it probably controlled the jury. Not only was it wrong as to the law, but in view of the fact that the plaintiff had conveyed the four acres, on request of defendant, to the latter’s wife, we feel bound to sustain this assignment and reverse the judgment with a new venire.
As we view this case we do not feel called upon to discuss the assignments of error separately nor are we convinced that any of the remaining assignments should be sustained. In our opinion, when the case shall be again tried, if the evidence shall be substantially as it is in the present record, the learned trial judge should instruct the jury that if they believe the testimony of the county surveyor, and the other witnesses corroborating him, and believe that the defendant purchased the thirty acres of land described in the agreement of December 31,1904, and that he had defaulted in the payment of the purchase money, that the verdict should be in favor of the plaintiff for the land described in said agreement, to be released on the payment of the balance of the purchase money due the plaintiff, with interest and costs, within such reasonable time as shall seem just and equitable to the jury.'
*306 The learned counsel for appellant close their argument by asking this court to reverse the judgment and here enter judgment upon the whole record in favor of plaintiff. The gentlemen lose sight of the fact that the record is in no condition to warrant this court in entering judgment for the plaintiff. The verdict was for defendant and judgment was entered thereon, and plaintiff’s learned counsel made no motion for judgment non obstante veredicto. Therefore, we can only reverse this judgment and send the case back for another trial.
The second assignment of error is sustained, and the judgment is reversed with a venire facias de novo.